#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J.G., a Minor, and E.M. <br> as Parent and Guardian of J.G. <br>     PLAINTIFFS, <br><br> v. <br><br> WYOMING VALLEY WEST <br> SCHOOL DISTRICT, <br>     DEFENDANT. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | <br><br><br><br> Case No.: |

## COMPLAINT

Plaintiff, J.G., a minor, and E.M., as parent and guardian of J.G., through their attorney, Drew Christian, Esquire, file the following Complaint against Wyoming Valley West School District.

### I     PARTIES

1. Plaintiff J.G. (hereinafter individually referred to as "Student") is a minor. For all times relevant to this Complaint, the Student has been a resident of and enrolled in the Wyoming Valley West School District, located in Luzerne County, Pennsylvania.

2. Plaintiff E.M. (hereinafter individually referred to as "Parent") is the parent of J.G. For all times relevant, the Parent has resided in Luzerne County, Pennsylvania.

3. Wyoming Valley West School District (hereinafter referred to as "the School District") is an entity created under 24 P.S. §17-17010-A, which, pursuant to state law, is defined as a local education agency (hereinafter referred to as "LEA"). See 22 Pa Code §14.103. As an LEA, the Commonwealth of Pennsylvania commissions the School District to administer and enforce, *inter alia*, the statutory mandates of the Individuals with Disabilities Education Act, 20 U.S.C. §1414, *et. seq.*, (hereinafter referred to as "IDEA"), Rehabilitation Act of 1973, 29 U.S.C. §794 (hereinafter referred to as "Section 504"), Americans with Disabilities Act, 42, U.S.C., §12101, (hereinafter referred to as "ADA"), and other related federally funded programs, to eligible students enrolled in the School District. The School District's administrative offices are located at 450 North Maple Avenue, Kingston, Pennsylvania, 18704, within Luzerne County, Pennsylvania.

## II     JURISDICTION AND VENUE

4. The claims of J.G. and E.M. (hereinafter collectively referred to as "Plaintiffs") arise from the ADA. 28 U.S.C.S. §1331 provides that United States District Courts have original jurisdiction over matters where a federal question is raised in cases under the Constitution, laws, or treaties of the United States.

5. The venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as the School District is located in this judicial district and conducts business within it. Plaintiffs reside in this judicial district, and their claims arose within the geographical boundaries of this judicial district.

### III   STATUTORY AND REGULATORY BACKGROUND

6. The ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

7. To establish a disability discrimination under the ADA, plaintiffs must establish the following:

> The elements for an ADA claim of discrimination are similar to Section 504, but not identical. J.M. ex rel. A.M. v. East Greenwich Twp. Bd. of Educ., Civ. No. 07-2861 (NLH), 2008 U.S. Dist. LEXIS 23463, 2008 WL 819968, at *5 (D.N.J. Mar. 25, 2008). In order to establish a prima facie case of discrimination under the ADA, a plaintiff must prove (1) that he is disabled, (2) that he is a qualified individual with a disability, and (3) that he has suffered an adverse action because of that disability. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citations omitted).
>
> *Derrick F. v. Red Lion Area School District*, 586 F.Supp 2d. 282, 299 (M.D. Pa., 2008).

8. Additionally, for claims for compensatory damages under the ADA, plaintiffs must also allege intentional discrimination by way of the following standard.

> A showing of deliberate indifference may satisfy a claim for compensatory damages" under Section 504 and Title II. Id. at 263. Additionally, "[d]eliberate indifference does not require a showing of personal ill will or animosity toward the disabled person." Id. Rather, deliberate indifference can be established where the defendant has knowledge "that a harm to a federally protected right is substantially likely" and the defendant fails to act. Id. (internal citations omitted)
>
> *C.M. v. Pemberton Twp. High Sch.*, 2017 U.S. Dist. LEXIS 11434, *16.

9. The ADA states that "in any action or administrative proceeding commenced pursuant to this Act, the court or agency, in its discretion, may allow the prevailing party…a reasonable attorney's fee, including litigation expenses, and costs." 42 U.S.C. § 12205.

## IV    FACTUAL BACKGROUND

10. The Student has been enrolled within the School District for all times relevant to this Complaint.

11. For all times relevant to this Complaint, the School District has recognized that the Student is disabled because he is eligible for special education services under the IDEA disability category of *autism*, as determined through evaluations conducted by the School District.

12. Due to the severity of the Student's autism, he lacks basic life skills such as verbal and non-verbal communication and toileting.

13. Given the evaluations and programming developed by the School District, the School District had knowledge that the severity of the Student's disabling condition causes him to be vulnerable and helpless under all circumstances.

14. Special education services under the IDEA are developed and implemented by School District administrators and staff, who create an Individualized Education Program ("IEP") that outlines specialized services to be provided to students with disabilities. Services provided through an IEP include extended school year ("ESY") programs, summer educational services, and associated transportation, if necessary.

15. The School District developed a plan through the Student's IEP to provide ESY services to the Student for the summer of 2025 at a center-based facility ("Graham Academy"), which the Student had already been attending during the 2024-25 school year.

16. Someone from the School District picked up the Student at his home in a van, marked as a School District vehicle, to be driven to the first day of the ESY program.

17. At the end of the first day of ESY, the School District driver dropped the Student off at home. During the drop-off, the Student was harming himself by slapping his head, which is a common behavior that the Student exhibits when he is upset.

18. During the drop-off, the Student's diaper was overflowing and apparently had not been changed all day.

19. At the end of the second day of ESY, the Student acted agitated and came home with marks, bruises, and cuts on his neck, which were not mentioned or explained by the driver.

20. Uncharacteristically, Graham did not contact the Parent by text, phone call, or note sent home with the Student on either the first or second day of ESY, which Graham Academy had previously done every day during the previous school year.

21. As the driver dropped off the Student at the end of the second day of ESY, the driver advised the Parent that there had been a "mistake" and someone would be contacting her. The driver did not provide any other explanation to the Parent.

22. The Parent immediately contacted Graham Academy and asked what had happened to the Student.

23. Graham advised the Parent that the Student had ***not*** been at Graham Academy on either of the first two (2) days of ESY and had no knowledge as to where the School District's driver took the Student.

24. The Parent assumed that the driver accidentally took the Student to some other School District ESY class at another location and called a School District's administrator to find out where the Student had been.

25. The School District administrator was curt with the Parent and advised the Parent, condescendingly, the Parent's assumption was wrong and that the Student had not been accidentally in another School District program for the first two days of ESY.

26. The School District administrator's response caused the Parent to then ask the obvious question of "if he wasn't in some other ESY program, then where was he for the past two days?"

27. The School District administrator advised that it would be looked into but then did not provide a follow-up response.

28. The School District acted with deliberate indifference when it failed to accommodate the Student's vulnerability and helplessness due to his disability.

29. The School District acted with deliberate indifference when it failed to adequately oversee the Student's transportation to and from Graham Academy.

30. The School District acted with deliberate indifference when it lost the Student for two (2) school days during its summer 2025 ESY program.

31. The School District's deliberate indifference caused the Student to suffer adverse actions, including emotional and physical harm.

32. Administrative remedies alone, such as compensatory education, do not remedy the harm caused to the Student.

## V    LEGAL CLAIMS

### COUNT 1
### DISABILITY DISCRIMINATION
### (ADA, DELIBERATE INDIFFERENCE)

33. The Student incorporates the preceding paragraphs as if set out here in full.

34. The Student is disabled, as acknowledged by the School District through the School District's evaluations and IEPs for the Student.

35. The Student is otherwise qualified for services as a student who resides within the School District, is enrolled in the School District, and is eligible for special education services.

36. The School District had knowledge that harm was substantially likely if it failed to act, based on its own evaluations and IEPs that outline the student's exceptional vulnerability and helplessness.

37. The School District denied the Student the benefits of its special education program by failing to accommodate the Student's disability evidenced by: failing to transport the Student to his ESY program; failing to provide the ESY program; failing to accommodate the Student's vulnerabilities and weaknesses derived from his disability; and for losing the Student for two (2) days.

38. The School District's deliberate indifference caused the Student to suffer adverse actions, including emotional damage, trauma, distress, and physical harm.

39. Administrative remedies alone, such as compensatory education, do not remedy the harm caused to the Student.

## COUNT 2
## DEMAND FOR ATTORNEY'S FEES
## (ADA)

40. The Plaintiffs incorporate the preceding paragraphs as if set out here in full.

41. The statute raised through Count 1 of this Complaint contains a fee-shifting provision.

42. Given the likelihood of success of this claim, Plaintiffs seek full reimbursement for fees and costs associated with this present litigation under the ADA.

43. The Plaintiffs reserve the right to amend and submit their invoices regarding attorney's fees and costs associated with this matter through a subsequent fee petition, if necessary.

## VI   PRAYER FOR RELIEF

Wherefore, the Plaintiffs demand:

A. Judgment for damages.

B. An Order for the School District to enforce the Student's right to special education services without deliberate indifference.

C. An Order for the School District to pay for all Plaintiffs' attorneys' fees and costs associated with the present litigation under the fee-shifting provisions of the ADA.

D. Any other relief as the Court deems fitting and just.

                                            Respectfully submitted,

| | |
|---|---|
| June 26, 2025, | s/Drew Christian |
| Date | Drew Christian, PA 85584 |
| | P.O. Box 166 |
| | Waverly, Pennsylvania |
| | (570) 343-1006 |
| | drewchristian123@gmail.com |
| | |
| | Counsel for Plaintiffs, J.G. and E.M. |